**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **K.B.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No: 1:19-cv-145** |
| | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **CITY OF CHATTANOOGA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF CHATTANOOGA'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. Pro. 12(b) (6) and E.D. Tenn. L.R. 7, Defendant City of Chattanooga (the "City), files this Memorandum of Law in Support of its Motion to Dismiss the Complaint of K.B. (the "Plaintiff") for alleged violations of her civil rights pursuant to 42 U.S.C. § 1983 by Desmond Logan ("Logan"). Plaintiff's Complaint fails to state a claim against the City for which relief can be granted. The Complaint alleges the City is liable for the alleged acts of Logan because it has a custom of inaction in the face of repeated civil rights violations by employees. However, as a matter of law, the allegations referenced in the Complaint are not sufficient to show or to even create an inference of the existence of such a custom of inaction on the part of the City. Therefore, the Complaint against the City should be dismissed with prejudice.

### FACTUAL ALLEGATIONS OF COMPLAINT

The Complaint alleges that on June 11, 2018, Logan, while on duty as a police officer of the City, committed a sexual assault against Plaintiff. Complaint ¶¶ 6-20, 63-65. The Complaint alleges that this assault violated the Fourth Amendment civil rights of Plaintiff giving rise to a cause of action under 42 U.S.C. § 1983. Complaint ¶¶ 3, 58-62.

The Complaint alleges the City is liable for Logan's actions "because of its custom, tolerance, and acquiescence to repeated federal rights violations by its police officers, including, specifically Officer Logan." Complaint ¶ 66. The Complaint further alleges that two former police officers, former Assistant Chief Edwin McPherson ("McPherson") and former Captain Pedro Bacon ("Bacon"), had knowledge of prior policy violations by Logan and covered them up. Complaint ¶¶ 67-68; 70-71. Additionally, the Complaint alleges the City is liable for Logan's actions because it has a "custom, tolerance, and acquiescence to repeated federal rights violations by its officers through its official policy of inaction in investigating the sexual misconduct of police officers and other City officials." Complaint ¶ 69.

### A. __All factual allegations in the Complaint that the City has a "custom, tolerance, and acquiescence to repeated federal rights violations by its police officers, including, specifically Officer Logan."__

The Complaint generally alleges the City was aware of two prior allegations of sexual misconduct by Logan. See Complaint ¶¶ 34-36 (the "Anonymous Allegation") and ¶¶ 37-47 (the "UTC Allegation").

Anonymous Allegation

The totality of alleged facts supporting the City's prior knowledge of the 2015 Anonymous Allegation is comprised of a reference to a Chattanooga Times News Free Press article published in July of 2018 over a month after the allegations of Plaintiff became public and another Times News Free Press article published on May 23, **2019**. Complaint ¶¶ 34 n.4, 48 n.7. No alleged victim, complainant, or witness is identified by the Anonymous Allegation. Complaint ¶¶ 34-36.

The Complaint does not identify any specific employees of the City other McPherson and Bacon who allegedly had knowledge of the Anonymous Allegation prior to Plaintiff's June 11, 2018 encounter with Logan. See Complaint ¶ 35 ("A police officer who spoke on condition of anonymity...said the most recent alleged assault was just one of at least two Logan committed

while on duty.  'It echoed back to the last time when they didn't act on this kid [Logan],' the officer said.  'They knowingly allowed a predator to keep that uniform on.'") Complaint ¶¶ 35, 66.   With respect to McPherson and Bacon, the Complaint does not allege that they had knowledge specifically of the Anonymous Allegation, only that a newspaper article stated that they "may have covered up years of rape allegations" with respect to Logan.  Complaint ¶¶ 48 and 49-55.  As more fully detailed in the Argument below,  general allegations that do not identify a responsible City final decision maker cannot establish any constitutional violation by a City policymaker as required by *Monell v Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

UTC Allegation

The UTC Allegation does not include any allegation of overt sexual assault by Logan, with the alleged conduct appearing more ambiguous and open to varying interpretations, even if arguably concerning.  Complaint ¶¶ 39-46.  The Complaint does not allege when the UTC Allegation occurred nor does it allege that Logan was on duty or otherwise acting under color of law as a City employee during the course of this allegation.

The Complaint alleges:  "On January 4, 2016, Chattanooga Police Lieutenant John Boe received a report that Officer Logan had attempted to sexually harass a female Aramark employee working at McKenzie Arena at the University of Tennessee at Chattanooga [UTC]." Complaint ¶ 38.   There is no allegation that "Chattanooga Police Lieutenant Jon Boe" was a policy making, final decision maker for the City and, if these allegations are reviewed beyond this level, whether he was even an employee of the City.

Citing a May 23, 2019 Chattanooga Times News Free Press article, the Complaint further alleges that McPherson was the "point of contact for Chattanooga police officers working at

[UTC] according to police officials."  Complaint ¶ 52.  The Complaint then leaps to the conclusion that "McPherson thus would have been able to suppress the 2016 incident in which Logan, in his role as a liaison officer working on UTC's campus, attempted to sexually harass a female Aramark employee…"  and "[u]pon information and belief, McPherson suppressed the 2016 report about Logan."  Complaint ¶¶ 53-54.

Failure to properly allege that the UTC Allegation occurred while Logan was working for the City or was reported to any final decision maker at the City destroys any inference Plaintiff hopes to draw of any City policymaker's alleged knowledge of this incident.  The Complaint fails to plead Logan was acting as a City employee during the UTC Allegation or that anyone actually employed by the City was ever specifically notified of the UTC Allegation.[1]  The Complaint fails to allege an essential element that "Chattanooga Police Lieutenant Jon Boe" or McPherson and Bacon were policy and final decision making officials for the City or, in Boe's case, even an employee of the City.  Both McPherson and Bacon were subordinate level supervisors and Jon Boe was not even employed by the City.

**B.** **All factual allegations in the Complaint that the City has a "custom, tolerance, and acquiescence to repeated federal rights violations by its officers through its official policy of inaction in investigating the sexual misconduct of police officers and other City officials."**

The Complaint alleges four instances in support of the claim that the City has a "custom, tolerance, and acquiescence to repeated federal rights violations by its officers through its official

---

[1] While not necessary for ruling on this Motion, the facts would show Logan was not on duty with the City during the events resulting in the UTC Allegation and that Jon Boe did not work for the City.  The UTC Allegation occurred while Logan was employed by a separate entity, the University of Tennessee at Chattanooga ("UTC") Police Department and Boe worked for UTC. Complaint ¶ 47.

policy of inaction in investigating the sexual misconduct of police officers and other City officials." Complaint ¶ 69.

Fields Claim

Plaintiff alleges that the "City refused to fire Detective Karl Fields ("Fields") after he made false claims that he was a victim of a carjacking to cover up that he wrecked his car while drunk and shooting his gun" (the "Fields Claim"). Complaint ¶ 56 (a). The Complaint does not state when the events of the Fields Claim are alleged to have occurred. Id. However, the Complaint alleges that Fields was subsequently fired by the City for sexual assault misconduct. Ibid. Such corrective action by the City does not establish any custom, tolerance or acquiescence in failing to investigate or take action on claims of sexual misconduct by Chattanooga Police Officers.

Crumley Claim

Plaintiff alleges that in 2003, former Chief of Police Jimmy Dotson removed now retired Captain Janet Crumley ("Crumley) from her post as the supervisor of the CPD Internal Affairs Unit ("IAU") "for allowing investigations to linger for months without conclusion" (the "Crumley Claim"). Complaint ¶ 56 (b). It is confusing how any allegation of a supervisor's decision to remove an employee for performance issues in 2003 has any relevance to the factual allegations against different policymakers fifteen years later in time.

McPherson Claim

Plaintiff alleges that the City "refused to follow the recommendations of its own IAU to discipline now retired Captain Edwin McPherson ("McPherson") for untruthfulness after the investigators found McPherson took actions to interfere with a murder investigation that involved his niece as a suspect" and that "[t]he City's command 'cleared' McPherson without

review by an entity outside of the police department" (the "McPherson Claim). Complaint ¶ 56 (c). The Complaint does not state when the events of the McPherson Claim are alleged to have occurred or any alleged policymakers engaging in inaction or tolerance which might establish any custom by the City. Id. This factual allegation does not establish any failure to discipline based upon any allegations of sexual misconduct by a police officer.

Page Claim

Plaintiff alleges that former Mayor Ron Littlefield hired his friend Paul Page ("Page") to be director of the City's General Services (the "Page Claim"). Complaint ¶ 56 (d). The Plaintiff alleges that "Page was actively engaged in acts of sexual harassment against female City employees and one non-employee outside of Page's duties with the City". Id. Plaintiff alleges that the City failed to take action against Page other than warnings and requirements to undergo training and that Page resigned rather than being fired. Ibid. The Complaint does not state when the events of the Page Claim are alleged to have occurred.[2] Ibid. The Complaint does not state any policymakers who made any employment decisions regarding Page, who was clearly not a police officer subject to discipline by the Police Chief.

**RULE 12 (b) (6) STANDARD OF REVIEW**

"A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8 (a) (2). The Court should dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b) (6).

---

[2] It is a matter of public record that Mayor Littlefield's tenure ended in April 2013, so presumably the events of the Page Claim occurred prior to that date.

On a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F. 3d 896, 903 (6th Cir. 2009). The complaint's allegations, however, "must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 644, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead the defendant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v Iqbal*, 556 U.S. 662, 678-79 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. While the plausibility standard is not akin to a probability requirement, it asks more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." *Z.J. v Vanderbilt Univ.*, 355 F. Supp. 3d 646, 658, 2018 U.S. Dist. LEXIS 214345 *2 (M.D. Tenn. 2018) (quoting *Lutz v Chesapeake Appalachia, L.L.C.*, 717 F3d 459,464 (6th Cir. 2013).

## ARGUMENT

**A.  <u>The City cannot be held vicariously liable for the alleged acts of Logan nor for the acts and omissions of employees or agents who are not final decision makers.</u>**

The only named defendant in this case is the City of Chattanooga. No legal claims are included to assert any liability by Logan who is alleged to have engaged in sexual misconduct towards KB nor by McPherson and Bacon who are alleged to cover up Logan's prior policy violations. Before a city can be held liable under § 1983, some "action pursuant to official

municipal policy of some nature [must have] caused a constitutional tort." *Monell*, 436 U.S. at 691. A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Connick v Thompson*, 563 U.S. 51, 131 (2011); *Monell,* 436 U.S. at 691; *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013); *Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged and is fact the wrongdoer. *Monell*, 436 U.S. at 692-95; *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Education*, 103 F.3d 495, 507 (6th Cir. 1996). The Complaint must plead facts that show a City policymaker is responsible either for the policy or, through acquiescence, for the custom that resulted in a §1983 violation. *Burgess*, 735 F.3d at 478; *Thomas*, 398 F.3d at 426, 429; *Doe*, 103 F.3d at 507.

To establish *Monell* liability for a municipality, the policymaker involved in the decision or acquiescence must be the official whose "decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller v Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) ("[M]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policy maker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials."); *Picha v City of Parma*, 1994 U.S. App. LEXIS 17406 *15-16 (Action of Mayor did not result in *Monell* liability for municipality where mayor's actions subject to review by council.).

Whether a given individual is a "policymaker" for purposes of establishing *Monell* liability is a question of state law. *Miller*, 408 F. 3d at 813. "It is purely a legal question which should be

decided by the trial judge…" *Swanberg v City of Canby*, 2015 U.S. Dist. LEXIS 119616 *34 (D. Or. 2015) (quoting *Los Angeles Police Protective League v Gates,* 907 F.2d 879, 889 (9th Cir. 1990) (citing *Jett v Dallas Indep. School Dist.,* 491 U.S. 701 (1989).  As detailed in section D.1. below, as a matter of law, the Complaint does not sufficiently allege that McPherson and Bacon were final, unreviewable decision makers.[3]

### B.  The Complaint must at a minimum plead facts that show Plaintiff's injury was a direct result of the City's official policy or custom.

The bulk of the factual allegations of the Complaint are devoted to allegations regarding Logan, which if proven, could result in individual liability against him.  *Complaint* ¶¶ 6-20 Factual Allegations, ¶¶ 58-65 Fourth Amendment Violation Allegations.  However, as noted above, stating a viable claim against Logan does not equal stating a viable claim against the City under § 1983.  To state a viable complaint against the City, Plaintiff must plead facts that show that the alleged federal right violation **was a direct result of the City's official policy or custom**.  *Monell*, 436 U.S. at 691, 694; *Burgess*, 735 F.3d at 478; *Thomas*, 398 F.3d at 426, 429; *Doe*, 103 F.3d at 507-508.   A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim.  Conclusory allegations will not lie.  *Warren v. Shelby County, Tenn.*, 191 F. Supp.2d 980, 984-985 (W.D. Tenn. 2001) (citing *Culberson v. Doan*, 125 F. Supp.2d 252, 263-64 (S.D. Ohio 2000)); *See also*, *Thomas*, 398 F.3d at 430-432.

There are four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom.  The plaintiff can look to:  (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a

---

[3] The only other person identified by name in the Complaint alleged to have any knowledge of Logan's alleged policy violations prior to his encounter with Plaintiff is "Lieutenant Jon Boe". Complaint ¶¶ 39-46.  As noted in section A. above, the Complaint does not allege Boe was an unreviewable decision maker of the City either.

policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Monell*, 436 U.S. at 694; *Burgess*, 735 F.3d at 478; *Thomas*, 398 F.3d at 429; *Doe*, 103 F.3d at 507.

The Complaint does not allege that Logan's actions were pursuant to any City legislative enactment or official policy nor does the Complaint allege Logan was acting as an official with final decision making authority. The Complaint makes no allegations regarding training and supervision provided to Logan.

Rather the Complaint alleges the City is liable for Logan's actions because of its "custom, tolerance, and acquiescence to": (1) repeated federal rights violations by its police officers, including, specifically Officer Logan; and (2) repeated federal rights violations by its officers through its official policy of inaction in investigating the sexual misconduct of police officers and other City officials. Complaint ¶¶ 66, 69. The City employees alleged to have had knowledge of and tolerated Logan's alleged pattern of policy violations are McPherson and Bacon. Complaint ¶¶ 48-55, 68. Thus, Plaintiff's Complaint alleges liability based on a "custom, tolerance, and acquiescence to" civil rights violations by the City as shown by the action and/or inaction of McPherson and Bacon. *Thomas*, 398 F.3d at 429.

**C.  The threshold for pleading a "custom" that results in liability for the City is high.**

A "custom" for purposes of municipal liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe*, 103 F.3d at 507-08  (citing *Monell*, 436 U.S. at 691; *see also*, *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993).   In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy."   *Doe*, 103 F.3d at 507-508 (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940).   It must reflect a

course of action deliberately chosen from among various alternatives. *Doe*, 103 F.3d at 508 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Doe*, 103 F.3d at 508 (quoting *Feliciano*, 988 F.2d at 655).

Plaintiff here alleges that the specific "custom" that is so engrained in the City so as to have the force of law is a **custom of inaction** in the face of civil rights violations by police officers and other employees. Complaint ¶¶ 66, 69. To establish municipal liability based upon such an "inaction" theory, the plaintiff must show:

> I. the existence of a clear and persistent pattern of unconstitutional activity;
>
> II. notice or constructive notice on the part of City officials;
>
> III. City officials tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> IV. that the City officials custom was the "moving force" or direct causal link in the constitutional deprivation.

*Burgess*, 735 F.3d at 478; *Thomas*, 398 F.3d at 429; *Garretson v City of Madison Heights*, 407 F.3d, 789, 796 (6th Cir. 2005); *Doe*, 103 F.3d at 508.

Such an alleged official policy of inaction "must reflect some degree of fault before it may be considered a policy upon which § 1983 liability may be based." *Garretson*, 407 F.3d at 796.

**D. The Complaint fails to allege facts sufficient to show an "official policy of inaction" by the City in violation of §1983.**

1. The Complaint does not allege that McPherson and Bacon were final decision makers with policymaking authority so that none of their alleged acts or omissions can be imputed to the City as an official policy or custom.

Similar to the allegations against Logan, the allegations in the Complaint might or might not make out plausible claims against McPherson and Bacon individually. However, McPherson and Bacon are not named as defendants. Therefore, the only analysis with respect to the claims the Complaint makes about their actions is whether the Complaint sufficiently alleges McPherson and Bacon were final decision makers for the City and therefore their actions created a plausible avenue for *Monell* liability against the City.

There are no allegations in the Complaint that either McPherson or Bacon were final decision makers for the City such that they were policymakers whose acts or omissions could result in liability for the City. The Complaint merely references the titles of each officer (which are clearly subordinate offices), and lists some supervisory responsibilities. Complaint ¶¶ 48-55, 68. As a matter of law, these allegations fail to allege the level of decision making authority necessary for the acts of McPherson or Bacon to result in liability for the City.

To establish *Monell* liability for a municipality, the policymaker involved in the decision or acquiescence must be the official whose "decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller v Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) ("[M]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policy maker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials."); *Picha v City of Parma*, 1994 U.S. App. LEXIS 17406 *15-16 (6th Cir. 1994) (Action

of Mayor did not result in *Monell* liability for municipality where mayor's actions subject to review by council.).

There is simply no allegation in the Amended Complaint that either McPherson or Bacon had the required level of decision making authority required to impose liability on the City for their actions. Such an omission is fatal to Plaintiff's *Monell* claim against the City. *Miller*, 408 F.3d at 814; *Picha*, 1994 U.S. App. LEXIS 17406 *15-16; *Robinson v City of Phila.*, 2015 U.S. Dist. LEXIS 139539 * 23-24 (E.D.Pa. 2015) (Philadelphia's 12(b)(6) motion to dismiss granted where Complaint did not adequately plead knowledge and acquiescence by the Police Commissioner of alleged civil rights abuses and cover ups by officers. "Custom requires proof of knowledge and acquiescence by the decision maker."); *Desoto v Bd. Of Parks & Rec.,* 64 F. Supp. 3d 1070, 1084-85 (M.D. Tenn. 2014) (Nashville's 12(b)(6) motion to dismiss plaintiff's amended complaint granted where plaintiff could not allege that supervisors had "final policymaking authority for the municipality."); *Houston v Tennessee*, 2011 U.S. Dist. LEXIS 138201 *16-17 (E.D. Tenn. 2011) (County government's 12(b)(6) motion to dismiss granted where no decision maker with final authority to establish any particular municipal policy is identified in complaint.).

The Compliant refers to a May 23, 2019 Times News Free Press Article that alleges McPherson and Bacon "may have covered up years of rape allegations" with respect to Logan. Complaint ¶¶ 48 and 49-55. While, if properly plead, such allegations might state a claim against McPherson and Bacon individually, Courts have routinely rejected *Monell* liability for a City based on allegations of a cover up by police supervisors who were not the final decision makers for the City. *See, Robinson,* 2015 U.S. Dist. LEXIS 139539 *23-24; *Jacobs v Palmer*, 2015 U.S. Dist. LEXIS 81739 *17-18 (E.D. Pa. 2015) (County government's 12(b)(6) motion to

dismiss granted where complaint failed to identify final decision maker responsible for alleged police actions.).

2. The Complaint does not plead sufficient facts showing the existence of a clear and persistent pattern of unconstitutional activity by the City.

The Complaint does not allege a clear and persistent pattern of neglect by the City that would equal an "official policy of inaction" that has been adopted with the force of law by policy-makers of the City. *See Burgess*, 735 F.3d at 478-479; *Thomas*, 398 F.3d at 429; *Doe*, 103 F.3d at 507. Instead the Complaint only contains references to four disparate instances alleged to have occurred over a period of at least 16 years which did not involve sexual misconduct by police officers or any actions by the same policymakers of the City. See, Complaint ¶ 56.

Three of the allegations relate to alleged conduct that is in no way similar to the alleged sexual assault misconduct of Logan. The Fields Claim related to alleged false claims. Complaint ¶ 56 (a). The Crumley Claim related to alleged slow investigative response. Complaint ¶ 56 (b). The McPherson Claim related to untruthfulness and interference with an investigation. Complaint ¶ 56 (c). None of these claims can fairly be said to show the City had a policy of inaction in the face of sexual assaults by officers. *See Burgess*, 735 F.3d at 478 ("[C]ustom-of –tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.") (Emphasis added); *See also, Thomas*, 398 F.3d at 432-433.

Just as importantly, the Complaint, by its own terms, shows that rather than being in-active, the City took corrective action in all three situations (firing Fields for alleged sexual misconduct; removing Crumley from her post for slow investigative response time and; investigating McPherson concerning interference in a murder investigation involving a relative.). See Complaint ¶ 56 (a), (b) and (c). *Doe*, 103 F3d at 508 (The Complaint must allege that the "failure to act in [Logan's] case was the direct result of a custom in the sense that the [City]

consciously never acted when confronted with its employees egregious and obviously unconstitutional conduct.") (Emphasis added). Not only does not Complaint not allege a clear and persistent pattern of consciously never taking action; it alleges instead that corrective actions were taken by the City in all three incidents.

The fourth allegation, the Page Claim, alleges city inaction in the face of sexual harassment by a city employee who was not a police officer subject to discipline by the police chief. See Complaint ¶ 56 (d). Again allegations are not of sexual assault; moreover, Page is not alleged to have even been an employee of the police department. And once again, the Complaint's allegations show that the City, far from having a policy of inaction, took corrective action including warnings and training related to Page before his resignation occurred. *Id*. *See also*, *Doe,* 103 F3d at 508; *Thomas,* 398 F. 3d 433-434.

The four instances alleged in paragraph 56 of the Complaint, could not be said fairly to put the City on notice that Logan would allegedly sexually assault someone while on duty without adverse employment action or criminal responsibility for such acts. Nor do the allegations give rise to any inference that the City had an official policy with the force of law to never take action to discipline employees. In fact, the Complaint alleges the opposite, that in each instance of alleged employee misconduct, the City investigated and took corrective action against its employees.

3. The Complaint does not plead sufficient facts showing notice or constructive notice on the part of City officials of such a pattern of unconstitutional inaction.

The Complaint alleges two prior instances of alleged misconduct by Logan. However, in each instance, the Complaint fails to allege facts that a final decision maker for the City had knowledge of the allegations prior to the alleged encounter between Plaintiff and Logan. The Anonymous Allegation simply refers to a newspaper article written over a month after Plaintiff

alleges she was assaulted by Logan in July of 2018.  See Complaint ¶ 34.  The UTC Allegation,

alleges only that a UTC employee was informed and, referencing a 2019 newspaper article,

seeks to imply that McPherson, by virtue of his positon as a liaison for the Chattanooga police

department to the UTC police department, must have suppressed any information from reaching

decision makers.  See Complaint ¶¶ 38, 48-54.

Thus, paragraph 34 merely alleges that an article citing an anonymous witness describing

an anonymous victim was published in the newspaper after the encounter between Logan and

Plaintiff in 2018.   Nor does paragraph 34 allege knowledge by any final decision maker or

policymaker of the City of the 2015 Anonymous Allegation.  Likewise, paragraphs 38 and 48-54

of the Complaint never allege that any final decision maker policymaker for the City was

informed of the 2016 UTC Allegation at the University of Tennessee-Chattanooga.  In fact,

paragraphs 48-54 state that McPherson, who was not alleged to be a policymaker or final

decision maker, suppressed any information regarding this incident.

The sum of Plaintiff's allegations that the City had actual or constructive notice of a

policy of inaction that resulted in her alleged sexual assault by Logan do not raise a right to relief

against the City above the speculative level as is required by *Twombly*  and *Iqbal*.  This is not

sufficient to survive a motion to dismiss.  There is simply no allegation in the Complaint that any

authorized final decision maker or policymaker with the City ever had knowledge of any alleged

prior bad acts by Logan.  *Gregory v Shelby County*, 220 F.3d 433, 441-442 (6th Cir. 2000) (An

actual decision maker must have notice of alleged prior acts.)  The other instances of alleged

employee misconduct cited by Plaintiff in ¶ 56 of the Complaint in no way could make it

"plainly obvious" to the policymakers of the City that Logan would sexually assault Plaintiff

while on duty.  *Burgess*, 735 F.3d at 478 ("[C]ustom-of –tolerance claim requires a showing that

there was a pattern of inadequately investigating <u>similar</u> claims.") (Emphasis added); *Stemler v City of Florence*, 126 F.3d 856, 865-866 (6th Cir. 1997) (One prior complaint of sexual harassment against a deputy did not give notice to municipality so that it should have been "plainly obvious" deputy would engage in future constitutional violations.).

4. <u>The Complaint does not plead sufficient facts showing City policymaker's tacit approval of sexual misconduct by Logan such that their failure to act can be said to constitute deliberate indifference.</u>

As noted above in section D.2., the allegations of the Complaint, rather than supporting facts of tacit approval of misconduct and deliberate indifference on the part of the City, instead show that in every alleged circumstance where the City had knowledge of potential misconduct by an employee, an investigation and corrective action took place. <u>See</u> Complaint ¶ 56.

The showing of such a custom or policy of inaction is an essential element of this type of Section 1983 claim. *Doe*, 103 F.3d at 508-509. The facts pled must show that the need to act is so obvious that the City's "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to Plaintiff's constitutional rights. *Doe*, 103 F.3d at 508. "Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to a pattern of constitutional violations. *Doe*, 103 F.3d at 508. It is not enough to allege that the City was negligent or mistaken in some of its actions or that there was a lapse or delay in some actions. *Gregory*, 220 F. 3d at 442. (Mere lapse in compliance cannot show a municipal custom of constitutional violations.)

Despite their extreme nature, the allegations regarding Plaintiff's encounter with Logan do not meet the burden of showing the existence of an official policy of inaction by the City. To properly plead the existence of such a policy the Complaint would have to show the existence of

a clear pattern of misconduct adopted as an official policy by the City by final decision makers of the City. *See Thomas*, 398 F. 3d at 433 (Even extreme circumstances of police misconduct alleged did not show pattern and policy.); *Doe*, 103 F.3d at 508 ("Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse."). Plaintiff alleges only that two subordinate level police supervisors had knowledge of Logan's prior bad acts. As noted above, the law is clear that McPherson's and Bacon's alleged knowledge, acts, and omissions are not chargeable to the City under *Monell* because they were not final decision makers for the City.

5. The Complaint does not plead sufficient facts showing that the City official's alleged custom was the "moving force" or direct causal link in the constitutional deprivation allegedly suffered by Plaintiff.

It is well established that there must be an "affirmative link" between alleged police misconduct and a "plan or policy, express or implied" of the City. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (no causal connection between various alleged violations of civil rights by police and any City practice or policy). In addition to alleging that the City, as an entity, caused the injury to plaintiff through its policy. The Complaint must also allege the injury was directly "incurred *because* of the execution of that policy." *Doe, 103 F.3d at 508 (*emphasis in original).

The Complaint must state sufficient facts to demonstrate "a direct causal link" between the alleged policy of inaction by the City and the alleged constitutional violation by Logan in order to show that the City's "deliberate conduct" in adopting a policy of inaction can be deemed the "moving force" behind the violation of Plaintiff's rights by Logan. *Spears v. Ruth*, 589 F3d 249, 256-257 (6th Cir. 2009); *Thomas,* 398 F.3d at 433; *Doe*, 103 F.3d at 507-508 (Even accepting allegations of prior indents of inaction, such incidents did not amount to a policy of inaction.). No such facts have been pled regarding any acts or omissions by a City final decision

maker or policymaker in the Complaint.  Rather, the Complaint specifically alleges the opposite

of what is required for municipal liability under *Monell* because it alleges that the wrongful acts

that allowed Logan to remain on the police force were committed by two subordinate level

police officers, not final decision makers for the City.

Likewise, the Complaint does not allege sufficient facts to create an inference that the

City's, knowing and deliberate execution of a policy of inaction regarding a disparate set of four

incidents stretching over approximately 20 years directly led to or was the moving force that

caused Logan to injure Plaintiff.  As such, the Complaint's allegations do not raise anything

other than "threadbare recitals" against the City which do not state a plausible claim for relief

against the City under *Twombly* or *Iqbal* at this stage of the proceedings.

**E. Plaintiff seeks impermissible inferences from newspaper articles cited at length in the Complaint.**

Much of Plaintiff's Complaint is simply a reference to two separate Chattanooga Times

Free Press articles published approximately one month and one year respectively after Plaintiff's

encounter with Logan.  Complaint ¶¶ 34, 48.  "On a motion to dismiss, the Court's review is

limited to the face of the Complaint and matters judicially noticeable." *Pellerin v Huron*

*Consulting Group, Inc.,* 2010 U.S. Dist. LEXIS 106079 * 5 (N.D. Cal. 2010) (quoting *North Star*

*Int'l v Arizona Corp. Comm'n,* 720 F.2d 578, 881 (9th Cir. 1983).  With respect to both articles,

the Complaint simply alleges the newspaper articles contained certain content followed by large

block quotes from the articles.  Complaint ¶¶ 34-36, 48-52.   On its face, the Complaint merely

alleges that certain articles were published on a certain date and had certain content.  The

publication of those articles on those dates can only result in an inference that the City was aware

of the allegations made in the articles <u>as of the date of the publication of the articles</u> which

occurred after the encounter between Logan and Plaintiff.  *See Passa v City of Columbus*, 123

Fed. Appx. 694, 697; 2005 U.S. App. LEXIS 2832 *6-8 (6ᵗʰ Cir. 2005) ((Use of document is proper only for the fact of the document's existence, not for the truth of the matters asserted therein.).

At the pleading stage, courts may only take notice of public newspaper articles to establish that a particular allegation was public knowledge as of the date of publication, not for the truth of the underlying content. However, it seems that plaintiff is seeking a greater inference from these articles. Namely, that the content of the articles quoted is true. Plaintiff is not entitled to such an inference even at the motion to dismiss stage. *See Passa*, 123 Fed. Appx. At 697, U.S. App. LEXIS 2832 at * 6-8; *White v City of Birmingham*, 2015 U.S. Dist. LEXIS 68202 *8 (N.D. Ala. 2015) (Plaintiffs in §1983 police misconduct case not entitled to notice of factual accuracy of newspaper articles, only the date of publication); *Gerritsen v Warner Bros. Entm't Inc.,* 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) ("to the extent the court can take judicial notice of press releases and news articles, it can do so only to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'") (quoting *Von Saher v Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9ᵗʰ Cir. 2009) (citing *Premier Growth Fund v Alliance Capital Mgmt.,* 435 F.3d 396, 401 n.15 (3ʳᵈ Cir. 2006).

Both the articles cited by Plaintiff were published <u>after</u> the events giving rise to Plaintiff's Complaint. The only inference appropriate to draw from paragraphs 34-26 and 48-52 of the Complaint is that the allegations made in them were public knowledge as of the date of publication of the articles, not that the content of the articles is true.

As noted in Argument sections A-D, above, even if the Court were to draw an inference that the content of the articles quoted was true for purposes of City's Motion to Dismiss, Plaintiff's Complaint must still be dismissed. The Complaint fails to meet *Monell* requirements

for pleading a final decision maker was deliberately responsible for a policy of inaction that had the force of law and that was the moving force behind Logan's actions.

## CONCLUSION

For the forgoing reasons, Plaintiff's Complaint fails to state a claim for which relief can be granted against the City.  The Complaint should be dismissed with prejudice and the City granted such other relief as the Court deems appropriate.


Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF CHATTANOOGA, TENNESSEE


By: /s/ Phillip A. Noblett
     PHILLIP A. NOBLETT - BPR No. 10074
     *City Attorney*
     MELINDA FOSTER- BPR No. 28769
     JOSEPH A. KELLY - BPR No. 14921
     *Assistant City Attorneys*
     100 E. 11th Street, Suite 200
     Chattanooga, TN  37402
     (423) 643-8250 - Telephone
     (423) 643-8255 – Facsimile

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a true and correct copy of the foregoing pleading upon Plaintiff's counsel by electronic filing and by depositing same in the United States mail, postage prepaid, and addressed to the following:

David Randolph Smith
David Randolph Smith & Associates
1913 21st Avenue South
Nashville, TN 37212

Chad Phillips
Sutherland & Belk, PLC
2505 21st Avenue South, Suite 400
Nashville, TN 37212

This 14th day of June, 2019.

/s/ Joseph A. Kelly
JOSEPH A. KELLY