## IN THE EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | | |
|---|---|---|
| "K.B." | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19-cv-145 |
| v. | ) | |
| | ) | JURY DEMAND |
| CITY OF CHATTANOOGA, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant's Motion to Dismiss should be denied for the simple reason that it rests entirely on an incorrect legal assumption: Plaintiff is not required to plead that a "final decision maker" was aware of the repeated sexual assaults committed in the line of duty by Officer Desmond Logan.

As another District Court sitting in the Sixth Circuit has explained the law on this issue:

> "Plaintiffs are not required to identify a policymaker such as the mayor or police chief who personally approved a policy or displayed 'deliberate indifference' to Plaintiffs' rights.

> *Monell*, 436 U.S. at 690-91 (1978) (An official legislative or executive act is not required to establish liability; "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels").

*Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 685 (E.D. Mich. 2012).

Because the above principle of law undermines the central legal foundation of Defendant's Motion, the Motion should be denied.

## Legal Standard Under Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action;" instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. Moreover, a court "cannot dismiss for factual implausibility 'even if it strikes a savvy judge that . . . recovery is very remote and unlikely.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556.)

**News articles cited in Complaint are incorporated into Complaint**

For purposes of a Rule 12 motion, news articles incorporated into the Complaint are afforded the presumption of truth. As the Sixth Circuit Court of Appeals stated the law on this question:

> A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. Fed.

R. Civ. P. 10(c). A court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

*Campbell v. Nationstar Mortg.*, 611 Fed. Appx. 288, 292 (6th Cir. 2015); *see also Rodriguez v. Providence Community Corrections, Inc.*, 191 F.Supp.3d 758, 762 (M.D. Tenn. 2016). "Extrinsic materials that 'fill in the contours and details' of a complaint without adding anything new may be considered without converting the motion to one for summary judgment." *Id.* (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). In *International Association of Machinists and Aerospace Workers v. Haley*, the South Carolina District Court applied this rule to a pending Motion to Dismiss. The Court observed:

> On a motion to dismiss, the Court accepts as true the well-pleaded facts of the plaintiffs' complaint. The second amended complaint is the operative complaint in this case. The plaintiffs attached several news articles to their original complaint and since the operative complaint refers to these exhibits, the Court will consider them. S*ee Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 F. App'x 197, 202-203 (4th Cir. 2001) (per curiam).

832 F. Supp. 2d 612, 617 (S.D. S.C. 2011.)  Thus, any news articles and the allegations contained within them are part of Plaintiff's FAC in this matter.[1]

## FACTUAL ALLEGATIONS

### 1. Officer Logan raped K.B. while he was on-duty, in uniform, and in a police vehicle.

On June 11, 2018, while on duty and in uniform, Chattanooga Police Officer Desmond Logan sexually assaulted and raped "K.B."  (First Amended Complaint "FAC", ECF 16, at ¶¶ 6-33.)  Logan raped K.B. against his police vehicle.  (*Id.* at ¶ 18.)  He then took K.B. to the

---

[1]     Defendant cites to inapposite case law for the mistaken assertion that Plaintiff's inclusion of news articles in her Complaint "can only result in an inference that the City was aware of the allegations made in the articles as of the date of the publication of the articles which occurred after the encounter between Logan and Plaintiff." (Def.'s Mem. at 19.) This assertion is incorrect, and none of the cases offered in support of it reflects the procedural posture of this case: adjudication of a Rule 12 motion where the Plaintiff cited to news articles in a Complaint.

Defendant cites *Passa v. City of Columbus*, (123 Fed. Appx. 694, 695, 2005 U.S. App. LEXIS 2832), for example, which involved a District Court's *sua sponte* consideration of a City Attorney's website—the website had not been included in the Plaintiff's Complaint; *White v. City of Birmingham* (2015 U.S. Dist. LEXIS 68202), as well as *Gerritsen v. Warner Bros. Entm't Inc.* (112 F. Supp. 3d 1011), upon which Defendant relies, each involved a Plaintiff's motion for *judicial notice* of certain news articles—in neither case did the articles or the allegations of those articles appear in the operative Complaint.

Hamilton County Jail. (*Id.* at ¶ 20.) K.B. repeatedly tried to tell the officers at the jail about the assault, but they would not listen to her or believe her. (*Id.* at ¶ 22.) She was not booked until the following day, nearly 24 hours later. (*Id.* at ¶ 22.) The following day, she was sent to Silverdale around 11:30 a.m. (*Id.* at ¶ 25.) She refused to shower; she was crying and screaming; and she demanded a rape kit examination. (*Id.* at ¶ 26.) Finally, she was taken to Erlanger, where a rape kit exam was performed at approximately 11:00 a.m. on June 14, 2018, the Thursday following the incident. (*Id.* at ¶ 27.)

While at Silverdale, K.B. made a report to Internal Affairs. Following this report, on June 16, 2018, Chattanooga Police Department Chief David Roddy issued a public statement announcing K.B.'s allegations. (*Id.* at ¶ 28.) The statement read, in part: "the Chattanooga Police Department and me personally does [sic] not condone any type of sexual misconduct by our officers." (*Id.* at ¶ 29.) Roddy also said that "the alleged incident is the first report of sexual misconduct against [Logan]." (*Id.* at ¶ 32.) But in fact, that was not true. (*Id.* at ¶ 33.)

**2. Officer Logan had a history of sexual misconduct while on duty; and his history of wrongdoing was known within the department.**

One month after the June 16, 2018 press statement of Chief Roddy, the Chattanooga Times Free Press reported that "a Chattanooga police officer under investigation for sexual misconduct was previously accused of raping a woman while on the job in 2015, according to another police officer and an alleged victim." (*Id.* at ¶ 34.) The officer involved was Desmond Logan. (*Id.*) He raped another woman in his police vehicle while on duty and in uniform. (*Id.*) The victim of the 2015 incident informed the Partnership Rape Crisis Center of what had occurred and was told it would "help with an investigation into the officer." (*Id.*)

The 2015 incident was not the only prior instance of Logan's official misconduct. In 2016, Chattanooga Police Lieutenant John Boe received a report that Officer Logan had attempted to sexually harass a female Aramark employee working at McKenzie Arena at the University of Tennessee at Chattanooga. (*Id.* at ¶ 38.) Officer Logan had offered to escort the woman to her vehicle at approximately 10:30 p.m. (*Id.* at ¶ 39.) The woman then offered to give Logan a ride to his car, because it was "late at night and cold outside." (*Id.*) While in the car, Logan removed his handcuffs and actuated his taser, intimidating the woman. (*Id.* at ¶ 43.)

The woman made a report of the incident and Logan was relieved of his term-of-service with the University Police Department. (*Id.* at ¶ 47.) He was not, however, relieved of his duties with the Chattanooga Police Department.

One of the news articles specifically referenced in the FAC reports:

> Another officer claimed Logan's misconduct was common knowledge within the department before the 2018 accusation. That officer called the Times Free Press the same day as Roddy's June announcement that Logan had been accused of sexual misconduct to say Logan's history of wrongdoing was known within the department.

(FAC at ¶ 48, n. 7.)

### 3. There was an internal cover-up of Logan's prior misconduct.

Following the filing of Plaintiff's initial Complaint (ECF 1) on May 13, 2019, The Chattanooga Times Free Press published an article titled "Two former high-ranking Chattanooga police officers may have covered up years of rape allegations." (ECF 16, at ¶ 48.) The article noted that "two now-retired, high-ranking officers [Assistant Police Chief Edwin McPherson and Capt. Pedro Bacon] may have played a role in covering up years of rape allegations against the fellow officer, according to sources with knowledge of the investigations." (*Id.* at ¶ 49.) The article stated

that "Officials believe McPherson and Bacon were involved in the suppression of records [regarding Logan's misconduct] and emailed about their attempts to cover up the accusations." (*Id.* at ¶ 51.) In addition, Assistant Police Chief McPherson "was the point of contact for Chattanooga police officers working at [UTC], according to police officials." (*Id.* at 52.) The FAC alleges that "McPherson would have been able to suppress the 2016 incident in which Logan, in his role as a liaison officer working on UTC's campus[2], attempted to sexually harass a female Aramark employee." (*Id.* at ¶ 53.) The FAC further alleges, upon information and belief, that McPherson, who had a history of suppressing investigations into his own family members, suppressed the 2016 allegation. (*Id.* at ¶¶ 53-54.)

### 4. In addition to Logan, Defendant tolerated misconduct of other officers.

The FAC alleges that Defendant had "long-established patterns of overlooking or providing excuses and reasons to justify the misconduct of

---

[2]    Defendant's Memorandum argues that the FAC does not "allege that Logan was on duty or otherwise acting under color of law as a City employee during the course of this allegation." (Def.'s Mem. at 3.) But in fact, the FAC clearly alleges that Logan was "in his role as a liaison officer working on UTC's campus" when he "attempted to sexually harass a female Aramark employee."

its officers and civilian employees in order to retain, promote, and/or re-

hire officers." (*Id.* at ¶ 56.) One such allegation specifically mentions

McPherson:

> The City refused to follow the recommendations of its
> own IAU to discipline now retired Captain Edwin
> McPherson for untruthfulness after the investigators
> found McPherson took actions to interfere with a
> murder investigation that involved his niece as a
> suspect. The City's command "cleared" McPherson
> without review by an entity outside of the police
> department.

(*Id.* at ¶ 56(c).) Another allegation concerned Detective Karl Fields.

According to the FAC:

> The City refused to fire Detective Karl Fields after he
> made false claims that he was a victim of a carjacking in
> order to cover up that he wrecked his car while drunk
> and shooting his gun. The City allowed Fields to remain
> as a homicide investigator, despite his obvious deceit
> that could have caused an innocent person to be charged
> with carjacking. Fields was later fired by the City for
> misconduct with a victim of a sexual assault. (Fields
> was alleged to have sexually assaulted a rape victim.)

(*Id.* at ¶ 56(a).) Because Fields was not disciplined for his conduct in

lying about being a crime victim in order to hide his own criminal activity,

Fields was still on the police force where he later had the opportunity to

sexually assault a rape victim. (*Id.*) With respect to these other instances

of officer misconduct, the FAC alleges that the City had a "custom,

tolerance, and acquiescence to repeated federal rights violations by its officers through its official policy of inaction in investigating the sexual misconduct of police officers and other City officials." (*Id.* at ¶ 69.)

## LEGAL ARGUMENT

The FAC alleges that Officer Logan violated Plaintiff's Fourth Amendment rights when he sexually assaulted her in his police vehicle. (*Id.* at ¶ 62.) The theory of municipal liability explicitly pleaded in the FAC centers on the City's "custom, tolerance, and acquiescence to repeated federal rights violations by its police officers, including, specifically, Officer Logan." (*Id.* at ¶ 66.) The FAC alleges that "Logan's pattern of illegal conduct gives rise to an inference that the municipality had notice of the conduct; and the municipality failed to take any remedial action in the face of an obvious need to act." (*Id.* at ¶ 67.) According to the FAC, "Logan's behavior, as evidenced by repeated inappropriate and illegal sexual misconduct, including prior rape and sexual assault and harassment incidents, evidenced a clear and persistent pattern." (*Id.* at ¶ 70.) The FAC alleges that the City had notice or constructive notice of Logan's unconstitutional behavior, "both through the specific knowledge of Assistant Police Chief McPherson and

through the persistent pattern of illegal conduct by Logan." (*Id.* at ¶ 71.)
The FAC alleges that a Chattanooga Police Officer said the City
"knowingly allowed a predator to keep that [police] uniform on." (*Id.* at
¶ 72.) The City thus "tacitly approved of Logan's unconstitutional
conduct, and its failure to act in light of the known circumstances
amounts to an official policy of inaction." (*Id.* at ¶ 73.)

With respect to causation, the FAC alleges that if Logan had been
removed from the police force following "either or both of the prior
incidents," Plaintiff "would have been spared the humiliation, indignity,
and violation to which she was subjected by Officer Logan while he was
on duty, in uniform, and in a police vehicle." (*Id.* at ¶ 74.) The FAC thus
alleges a clear causal connection between the municipality's illegal
"custom" and the Plaintiff's constitutional injury.

### 1. The FAC pleads a prima facie case of municipal liability for a custom of inaction.

A plaintiff raising a municipal liability claim under § 1983 must
demonstrate that the alleged federal violation occurred because of a
municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,
694 (1978). A plaintiff can make a showing of an illegal policy or custom
by demonstrating one of the following: (1) the existence of an illegal

official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The FAC travels under the fourth theory, "a custom of tolerance or acquiescence of federal rights violations." The Sixth Circuit has articulated the requirements for a municipal liability claim based on the theory that the defendant had a custom of tolerating constitutional violations that was unwritten but nevertheless entrenched through actual practice. The plaintiff must show:

> 1. The existence of a clear and persistent pattern of the alleged unconstitutional conduct;
>
> 2. Notice or constructive notice on the part of the defendant;
>
> 3. The defendant's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and
>
> 4. That the defendant's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996). The FAC methodically, in order, alleges each of the above elements: existence of a pattern (FAC at ¶ 70); notice or constructive notice (*Id.* at ¶ 71); tacit approval (*Id.* at ¶ 73); and direct causal link (*Id.* at ¶ 74.) The FAC thus clearly alleges the required legal elements, supported by factual content, to state a municipal liability claim under an "inaction" theory.

## 2. Plaintiff is not required to identify a policymaker such as the mayor or police chief who personally approved a policy or displayed "deliberate indifference" to Plaintiff's rights.

A central analytical assumption underlying Defendant's memorandum is that Plaintiff is required to prove that a "final decision maker" approved of the policy alleged to have violated Plaintiff's rights. (*See* Def.'s Mem. at 12, "The Complaint does not allege that McPherson and Bacon were final decision makers with policymaking authority so that none of their alleged acts or omissions can be imputed to the City as an official policy or custom.") But that assumption is simply incorrect.

The case of *Mobley v. City of Detroit*, decided by a sister District Court in the Sixth Circuit, helpfully illustrates that a Plaintiff may establish a "policy" without pointing to a specific policymaker who

personally approved or ratified a custom of constitutional violations. (938 F. Supp. 2d 669, 674 (E.D. Mich. 2012).)

In *Mobley*, the plaintiffs attended a late-night party at an after-hours venue in Detroit, Michigan. (*Id.*) Detroit police had surveilled the venue for a series of liquor and vice law violations over the course of several months. (*Id.* at 675.) On May 31, 2008, Detroit police raided the venue. They detained, searched, and charged all 130 patrons with loitering. (*Id.*) Plaintiffs filed suit under 42 U.S.C. § 1983, alleging that the police had arrested them merely for their presence, as opposed to any particularized probable cause. (*Id.*) The theory of municipal liability on which plaintiffs based their *Monell* claim was that "both the seizure of persons and vehicles was done with the blessing of the City" and that seizures of persons and cars was done under the authority of long-standing policies and customs of the City and the DPD." (*Id.* at 676.)

The City moved for summary judgment on the *Monell* claim, arguing, in lockstep with the Defendant here, that Plaintiffs did not point to "a policy maker such as the Mayor, Police Chief or City Council members who implemented such a policy." (*Id.* at 677.) The Court rejected this argument by pointing directly to *Monell*:

The City argues it is not subject to liability because "Plaintiff [sic] cannot show that a policy maker such as the City of Detroit Police Chief, Mayor, or City Council members, implemented the policy or custom . . . ." But, *Plaintiffs are not required to identify a policymaker such as the mayor or police chief who personally approved a policy or displayed "deliberate indifference" to Plaintiffs' rights. Monell*, 436 U.S. at 690-91 (1978) (An official legislative or executive act is not required to establish liability; "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.").

Although evidence of a policymaker's specific decision or deliberate indifference are potential avenues to establish municipal liability, *they are not necessary if a plaintiff can point to testimony from which a jury can reasonably infer an unconstitutional municipal custom and practice. See, e.g., Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) ("If such a showing is made, . . . a local government may be liable for its custom irrespective of whether official policymakers had actual knowledge of the practice at issue.")

(*Id.* at 684-685, emphasis added.) The Court's analysis was grounded in *Monell* itself, which recognized municipal liability for a custom "even though such a custom has not received formal approval through the body's official decisionmaking channels." (*Id.*) The Court also relied on the Ninth Circuit case of *Thompson v. City of Los Angeles*, in which the Court held that "a local government may be liable for its custom

irrespective of whether official policymakers had actual knowledge of the practice at issue." (885 F.2d 1439, 1444.)

Subsequent case law in the Ninth Circuit has further solidified this principle. In *Hunter v. County of Sacramento*, the Ninth Circuit granted Plaintiffs a new trial following the trial court's refusal to instruct the jury regarding plaintiffs proposed jury instructions on a *Monell* policy claim. (652 F.3d 1225, 9th Cir. 2011.) One such proposed instruction was that: "Liability for an established custom can be imposed irrespective of whether official policy makers had actual knowledge of the practice at issue." (*Id.* at 1229.) On review, the Ninth Circuit held that the trial court erred by declining to use this and other instructions. (*Id.* at 1230.) Relying on *Monell*, the Court first observed that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so wide-spread as to have the force of law." (*Id.* at 1233, citing *Monell*, 436 U.S. at 690-691.) The Court also noted:

> Our *Monell* decisions have also recognized that a "municipality may be liable for its custom 'irrespective of whether official policy-makers had actual knowledge of the practice at issue.'" *Navarro v. Block*, 72 F.3d 712,

714-15 (9th Cir. 1995) (quoting *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)).

(*Id.* at 1234, n. 9.)  The trial court's refusal to instruct the jury that a municipality may be liable even "irrespective of whether official policymakers had actual knowledge of the practice at issue" was thus reversible error.  (*Id.*)  The appellate Court noted that "evidence of inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." (*Id.* at 1234, n. 8.)

In this case, Plaintiff is not required to show that a final decision maker personally ratified Desmond Logan's repeated sexual assaults and rapes while on duty, in uniform, and in his police car.  To require such a showing would run afoul of *Monell* itself.  It is enough for Plaintiff to present "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." (*Id.* at 1233).  Plaintiff, at the Rule 12 stage, respectfully submits that she has met her burden.

## CONCLUSION

Plaintiff has adequately pleaded a claim for municipal liability against the City of Chattanooga by establishing that Officer Logan's long history of sexual misconduct was well-known within the police department—so well-known, in fact, that even high-ranking department officials, including an Assistant Police Chief, covered up Logan's on-duty sex crimes. A reasonable jury could infer a policy of acquiescence to constitutional violations based on the pattern of Logan's pervasive misconduct. Plaintiff is not required to plead that a specific policymaker affirmatively ratified Logan's misconduct. Rather, it is enough to show evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. As Plaintiff has met this burden at the Rule 12 stage, Defendant's motion should be denied.

Respectfully submitted,

DAVID RANDOLPH SMITH & ASSOCIATES

By:   /s/ Christopher Smith

Christopher W. Smith, TN BPR #034450
csmith@drslawfirm.com

David Randolph Smith, TN BPR #011905
drs@drslawfirm.com
Dominick R. Smith. TN BPR #028783
dom@drslawfirm.com
W. Lyon Chadwick. Jr. TN BPR #029599
lyon@drslawfirm.com
1913 21st Avenue South
Nashville, Tennessee 37212
615-742-1775 phone
615-742-1223 fax
drslawfirm.com

SUTHERLAND & BELK, PLC

Chad Phillips, TN BPR #036158
chad@sbinjurylaw.com
2505 21st Avenue South
Suite 400
Nashville, TN 37212
P: (615) 846-6200
F: (615) 208-2255
https://sbinjurylaw.com/

*Attorneys for Plaintiff*

## Certificate of Service

I certify that on June 27, 2019, a copy of the foregoing document was sent to all parties listed on the ECF mailings list for this case.  These parties are:

W Lyon Chadwick , Jr
lyon@drslawfirm.com

Joseph Allen Kelly
josephkelly@chattanooga.gov

Stanley Chadwick Phillips
chad@sbinjurylaw.com

David R Smith
drs@drslawfirm.com

Dominick R Smith
dom@drslawfirm.com

Phillip A Noblett
noblett@chattanooga.gov, camp_kathy@chattanooga.gov

Melinda J Foster
foster_melinda@chattanooga.gov, vmeachen@chattanooga.gov, kpepoy@chattanooga.gov


/s/ Christopher Smith